Butler v. Lisa A. Mitchell Good morning, Your Honors. Good morning. If it pleases the Court, my name is Michael Fellow, and I represent Reginald Butler. I'd like to start by referencing something my brother said in his brief, which is that the AEDPA is intended to correct extreme malfunctions in state criminal justice systems. And in our opinion, in this case, a 12-year delay between the issuance of a criminal complaint and trial is the definition of an extreme malfunction of the criminal justice system in Massachusetts. Does the Rashad case allow you to make that argument? You say a 12-year delay, but if we follow Rashad, there's no 12-year delay. There's a delay of, I don't know, somewhat four years or so. But I mean, Rashad took the position that held that a complaint unaccompanied by any other kind of sort of notorious publicity does not start the court. Well, I would say that the Supreme Judicial Court is the ultimate arbiter of what a criminal complaint in Massachusetts constitutes. The Supreme Judicial Court was very careful not to opine on what side of the constitutional speedy trial clock. It said that the Massachusetts counterpart provision was started by the federal complaint. That's how Trump, how federal courts have interpreted the federal constitutional claim. It's true that they limited it and said that they were, at least under Article 11, that a criminal complaint triggers the speedy trial right. But they described the criminal complaint exactly in the language used by Marion and McDonald and the Supreme Court has said that... But the criminal complaint that they described was no different than the criminal complaint that we described in Rashad. Well, I believe the analysis was a little different. I mean, first, they, the SJC has said that this is a public accusation. And in Rashad, the court said that it wasn't a public accusation. In my brief, I've included a section of the district court rules that say every criminal complaint in Massachusetts is presumptively open to the public. In, I think it's Bostick, we talked about the critical issue for triggering the speedy trial right being the moment at which the prosecution was really initiating. Now we also have said in Rashad that a, that what matters is whether there's kind of been a formal public accusation. Those are not necessarily the same thing. And as I read Rashad and Bostick together, it seems like our precedent is suggesting that until there is the kind of formal public accusation that actually shows a commitment to prosecute, the speedy trial clock has not been triggered. And Rashad and Bostick together seem to suggest that that occurs not just with the filing of a complaint, even though on its face it may be a formal public accusation, but occurs only when there's been more intentionality in committing to prosecute, such as from a grand jury, indictment, et cetera. What would you say in response to that? Well, Your Honor, I would say that the SJC looked at the formal criminal complaint in Massachusetts, interpreted state law, and said that this is a public accusation. It ends the period where the person is simply pre-accused. It ends the investigatory period, which is the definition the Supreme Court has used, and demonstrates the intent on the part of the government to prosecute. In this case, they lodged a warrant against the defendant, further indicating their intent to prosecute. So if I get it right, you're saying if the federal test is, is this state committed to prosecuting the person? If the highest court in the state says yes, that's all we need to know for purpose of the case. He intends to have that commitment to prosecute that the Constitution treats as determinative for triggering the speedy trial clause. Yes, that is my argument, Your Honor. And then how do you, assuming that is the argument, how do you deal with the fact that our precedents in Bostick and Rashad don't seem to allow for that argument to succeed? Since we had the exact same kind of complaint in Rashad, and a very similar type of issue in Bostick, but putting them together, neither case seemed to look to the state court. Is the difference here that we've got a actual formal state court finding now? Yes, exactly. Rashad and Bostick both came out before the SJC had explicitly declared this. Many cases in Massachusetts that said a criminal complaint triggers a speedy trial analysis, but none had explicitly said, even in a felony case, that this is the case. And so once the state has said that, you'd say now we're in a different situation, because we know something about the state's commitment to prosecute from the filing of this formal complaint that we didn't know in Rashad and Bostick? Yes. And that, in effect, is delegating the content of federal law to a state court. I don't see how that can be. I believe it's delegating the contours of when the right is triggered to the state courts, because the law is different in every state. So that the logical conclusion of your position is that 50 defendants in 50 different states each have a criminal complaint filed, and the federal constitutional speedy trial clock is calculated differently in each state, depending on how the state treats that criminal complaint? Yes, because some states treat criminal complaints as simply nothing more than a basis for issuing an arrest warrant. In Massachusetts, you can be brought to trial, convicted, and sentenced on nothing more than a criminal complaint. And the only difference is if you waive your right to indictment. Well, that's your right to indictment. So the other argument would be that in Massachusetts, if you waive your right to indictment, you're also waiving your right to a speedy trial. Just so I get the logic of it, the notion is, on this view, the federal speedy trial right is meant to be triggered at the moment when the accused really is in serious jeopardy of being prosecuted by the state. Exactly. If a state tells us, we have done what we consider to be enough to show that we're really going after him, there's no reason for a federal court to take a different view from that. If a different state chooses to say, you know, when we file a complaint, we don't mean anything that much by it. You should really wait till we get to the grand jury proceeding. Then you'd say the federal speedy trial right wouldn't be triggered in such a state. In other words, it's not delegating to the state to determine when the clock runs. It's the same test. Does the state really intend to prosecute? And then we just wait to hear from the state, do they really intend to prosecute? Exactly. And I think there's one case that I came across yesterday, which I don't know why it wasn't in my brief, Moore v. Illinois, a Supreme Court case where they're looking at whether the right to counsel attaches under the Sixth Amendment. And they looked to Illinois state law to determine when that happens. And there are many circuit court cases, one of which is cited in my brief, that do the same thing. It's simply looking at states, allowing the states to have their own laws, their own set of circumstances and legal procedures. And then the federal court using that as the basis, the federal court gets to define what it means for a speedy trial for the right to trigger. And then the state court says, well, in this case, under our law, that standard's been met. You'll send us the Moore citation in the 28-J letter, but as I understand, even if we credit your argument, as I understand the situation in Massachusetts, a defendant can't be prosecuted on a criminal complaint unless he is willing to waive indictment. Isn't that correct? Yes. Yeah. But the point is that if the indictment is... So why doesn't the time run from the time of his waiver of indictment? Yeah. I'm sorry. I didn't hear that. If that is, as you have just explained it, then why doesn't the speedy trial clock start running at the moment at which he waives the indictment? Well, again, because Massachusetts has said that it's a public accusation that a criminal complaint can go forward all the way to trial. But I thought we were starting in this discussion, I thought we were starting with the premise that the reason a federal court should credit a complaint as sufficient is that the complaint is, in effect, a definitive statement within that state of an intent to go forward. That argument becomes more complicated when we recognize that in Massachusetts, the state cannot go forward to prosecute without an indictment unless he waives the indictment. If that is going to be the standard, i.e., if we're going to say, OK, we accept the state's view that they're serious when it gets to the moment of indictment, then in an instance in which the defendant waives indictment and goes on the complaint alone, allows them to go on the complaint alone, I should think the clock would run from the moment at which he waives, because that's the indictment or waiver is the definitive act, even on the state's own view of its law. Well, first of all, obviously, this issue wasn't addressed by the SJC about waiver. Yes, because the SJC was deciding a state law issue, they didn't decide the starting date for the constitutional analysis, they decided it under the Massachusetts Constitution. And the difference is, for the Massachusetts speedy trial clock to run, all you need is a public accusation. Under our decisions in Bostic and Rashad, you need something more, you need the defendant to be put in jeopardy. And that doesn't occur until the time of an arrest or an indictment, typically. And one of the things the court points out in this case is that if we don't allow a complaint to trigger the speedy trial clock, then people who are incarcerated who don't get arrested, instead, they have warrants lodged against them, are not going to be subject to, they're not going to have the right to a speedy trial. And that allowing a criminal complaint is to make that determination for purposes of its speedy trial law. No question about that. Well, Your Honor, I believe I make this argument fairly strong in my brief, that the courts have looked at state law to determine Sixth Amendment rights of counsel, and there's no difference. There's no reason why they shouldn't look to the state's determination for speedy trial. Right, but the issue is when we look to it, what do we find? Because in Rashad, I think, in a footnote, we said, of course, we're not dealing with the issue of what might happen if they waived indictment. And then we cite the provisions of mass law that allow indictment to be waived. But here, that didn't happen, which suggests in Rashad, I think, the implication of it was, of course, if you don't waive indictment, we take Massachusetts at its word that they're only going to go forward with the prosecution seriously post-indictment. Now maybe the mass courts think that for their speedy trial right under the state constitution, it's enough to just formally accuse whether you've indicted or not. But it seems that under our precedent, as we interpret the speedy trial right under federal law, the question of whether you have made a formal public accusation is not enough. Well, the Supreme Court, and we have to look at the Supreme Court's stat statements on these issues. The Supreme Court says, indictment, information, or other formal accusation, they never have ever explicitly excluded a criminal complaint. And then what they've indicated is that what has to happen is that this has to go from, it doesn't apply to the pre-accusation investigation period, it applies to the accusation period. And in Massachusetts, a person is accused. There's a formal finding of probable cause before a criminal complaint can issue, just like with a grand jury. And the indictment is the defendant's right. So if he chooses not to waive that right, or if he chooses to waive that right, then it seems that that shouldn't be the marker as to whether he is entitled to a speedy trial. And in this case, you see the damage that happens. This man has spent seven and a half years in jail after sending in his speedy trial form. He went to other courts and resolved all of his other cases, and was given a form by the to another government agency that lost it. And the government just seems to have forgotten about him for all this period of time. They were obviously interested in pursuing him because three days after he was released, they issued another arrest warrant and then arrested him. In the time you have left, just assume the clock starts later than you wish. It starts with the indictment rather than with the complaint. Can you win? It's only a four-year period? I mean, based on what the lower courts have said and the way they've allocated the delay of four years there, granting only 310 days of those to the government and saying the rest is based on the defendant's investigations and motions and things, I'd never like to concede anything, but I think that makes it much tougher for me, definitely. But we're talking about a fundamental constitutional right. We're talking about a right that's as fundamental as any other right that a man asserted when he knew he had charges against him, and then it just disappeared. And nobody did anything in the government to try to bring him back until he was released. And Massachusetts has said this starts the speedy trial clock, and I believe this court has to defer to that ruling and start the clock when the criminal complaint issues. And it looks like I'm about out of time, so unless there are other questions? Thank you. Thank you. Thank you. May it please the court, Christopher Hurrell for the respondent. I'll start with the issue of when the speedy trial clock started. Because we're here under habeas review, the review is whether the Massachusetts SJC's ultimate determination that there was no speedy trial violation was contrary to reasonably established, to reasonably clear Supreme Court precedent. As my brother stated during his argument, the Supreme Court has never held that a criminal complaint triggers the Sixth Amendment speedy trial clock. The SJC in this case did not hold that a criminal complaint triggered the speedy trial clock. The SJC noted that there was no clear guidance from the Supreme Court, has a footnote with the survey of the conflict among different circuit courts of appeals and other state courts, and explicitly limited its holding on the threshold issue of when the clock started to when the clock started under the Massachusetts Declaration of Rights Article 11. Just as a standard of a viewpoint, that means we decide when the clock starts de novo? For when the clock starts itself, that would be, you can't give deference to a finding that the SJC never made. So that would be, for that aspect of the analysis, that would be de novo finding. Which is what the district court did. But even then, the de novo finding would have to have been a de novo finding about federal law. That's correct. That is correct. Which the SJC didn't type. They explicitly disclaimed it. So the district court, in recognition of that, took a look at what has been clearly established by Supreme Court law, and it's complaint, indictment, things of that nature. And because of that, the SJC basically made a de novo finding that the clock, for purposes of Sixth Amendment issues, didn't start until the indictment. And that actually has support in the text of the Sixth Amendment itself. And rather than focus on kind of the formalism of, it's a criminal complaint, it's this, it's that. The Sixth Amendment says, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. If you look at what happened here when it came to this filing of the criminal complaint, it wasn't filed by a prosecutor. Massachusetts law doesn't require official involvement. I can be a complaining witness, in this case it was a police officer. And rather than this being the spot where we had moved from an investigatory period  in three days after the crime was committed, we're not in a situation there where the prosecutors are ready to move forward, or have even made the decision to move forward. And in other contexts, the state court has held that the decision by the judiciary cannot force a state prosecutor to move forward with the prosecution. So the finding of probable cause and the issuing of the complaint can't trigger the executive branch's desire to move forward with the prosecution. Is, just out of curiosity, is the text of the analogous mass constitutional speedy trial right the same? As to the speedy, it's a little bit different, I believe, because I don't know the answer to that. Does it contain the words, in all criminal prosecutions? Correct. Yes, it does. Yes, it does. It does contain that. So because there's no clearly established Supreme Court law with regard to criminal complaint, we have to look to see what is clearly established, and that is an indictment as this court held in the shot. Why do we look to what is clearly established? You've just said that because the SJC made no finding about when the constitutional speedy trial clock started, that we have to address that de novo. We have to apply clearly established law on the court's ultimate decision. Correct. It's balancing of Barker and Wingo. Right, correct. But we have to decide what we think is right as to when the speedy trial clock started. That's correct. Okay. So, moving on to the other Barker factors, one of the other ones that is challenged is the assertion of the speedy trial right. In the Supreme Court, Barker explicitly rejected the assertion versus waiver dichotomy that the petitioner is urging here. In Barker, the Supreme Court instead instructed courts to weigh the frequency and the force of the objections as opposed to giving significant weight to a purely pro forma objection. Here, there's no evidence that the petitioner, other than signing a request for a speedy disposition. Sorry, Judge Brown. I'm just trying to figure out how, there's a speedy trial form request? There is. Do we have anything in the record that shows what that speedy trial form request says or asks of the? We do. It is actually, it's found at a page. I'm just trying to think for a human being and how they're supposed to figure out this distinction between the speedy trial right under the state constitution, the speedy trial right under the federal constitution. You get a form. So, the form. The form says, do you assert your speedy trial? Would you like to be tried quickly? You say, yes, I would. And then, they're supposed to figure out, oh, actually, that wasn't the moment you were supposed to ask to be tried quickly. You're supposed to figure out that later on is really the moment you're supposed to ask again. So, the form itself is strictly couched in state court terms. It doesn't, my understanding is that the form doesn't mention the Sixth Amendment. It specifically identifies the Massachusetts procedural rule regarding speedy trial in the Massachusetts statute. Right. I'm just thinking from an actual person. Oh, sure. You would think that that might be the moment at which I'm being asked, should I assert my speedy trial right? So, there are two issues with regard to that. As this court noted in Rashad, if you assert a speedy trial right before it attaches, and here we're dealing with the Sixth Amendment right, and when that attaches, then that's not given very much weight. Right. No, I'm thinking of it for the perspective of whether he did timely assert or vigorously assert his speedy trial right. So, maybe some suggestion in the case that he didn't really because he only did it too early. So, I'm thinking if he's kind of reasonably confused about the moment which he's supposed to assert it, the fact he doesn't assert it a second time later, should that really be held against him? Well, it should because under Barker, it's not just when you assert it. It's the force and frequency with which you assert it. Barker notes, if you're really having your speedy trial rights denied to you to the point where you're suffering prejudice, you're more likely to vigorously and repeatedly assert this request the more that you're feeling the prejudice. So, there's two aspects to that. One, it predated the attachment of the right, but two, there's nothing after that. There's no request, hey, what happened with my request for a speedy disposition of this case? He's told all that period of time that there's no case against him, isn't he? So, there are reports that come out basically that say, it's just there's a column that says pending legal issues and it's basically none, no pending legal issues. So, I mean, that definitely isn't a great fact for us. It doesn't, it's still, you know, I wouldn't say that it controls here. What the SJC had held was that the fact that he had been placed on notice about it being a possibility initially and then did nothing with that was basically evidence of the, you know, similar to what was going on in Rashad where he may have been hoping to fly under the radar because of a possible procedural issue or some, you know, political oversight. But does that seem, I mean, I guess that's what I'm, does that seem like a reasonable conclusion to make when he's basically under the official records, under the impression he's not trying to fly under the radar, there's no radar operating? I think the SJC has the latitude under, under Habeas review here, you know, whether we would decide differently on direct appeal really isn't the question here. The issue is whether that aspect of things and as it fed into the SJC's ultimate determination that there was no speedy trial. But isn't what the SJC meant was that, was that, was that he went, was that after he was told there was nothing pending against him, he was then indicted, he knew about that. Well. And he went for close to four years without reasserting his speedy trial, right? I think, I think they make both of those arguments and that's, you know, one of the other ways in which he acquiesced to the delay. It's both by not asserting it while he's, reasserting it while he's incarcerated and it's also in, out of the four years after indictment, the holding that only 310 days of that were attributable to the prosecutor. Moving on to the issue of the fourth Barker factor, which is prejudice to, prejudice to the defendant. Generally speaking, the, the Sixth Amendment protects three interests, preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the accused, and then the third is limiting the possibility of prejudice to the defense. We don't have any evidence that the petitioner was incarcerated on these charges pretrial. The SJC made a finding that he was not. When he was incarcerated, it was for unrelated crimes and he was only on bail for a month for this issue. So, the first interest that's protected by the speedy trial, the possibility of prejudice to the defendant isn't at issue there. The SJC also found that there was no allegation of any particularized anxiety or concern on behalf of the accused. The second aspect of that is also belied by the fact that he did acquiesce to delay after he was indicted. If it was the sort of thing where he was feeling the sort of anxiety and concern, he could have moved for a speedy trial at that point and did not. And then third, we move on to the more sort of thorny issue of the possibility of prejudice to the defense. Depending on when the right to speedy trial attaches, there are basically two different ways of looking at this issue. The first is whether there's particularized prejudice to the defense because of the time that passed. Basically the allegation here was that some evidence went missing. Some people didn't remember things. The Commonwealth responded to each of those issues. The SJC addressed them. The couch cushions that were missing from the scene of the rape, given the defense that was at issue here where the petitioner conceded intercourse, the DNA evidence proved that there was intercourse. And the only issue was really whether or not there was consent. Neither the SJC nor the petitioner here in his filings has offered any reason why the loss of the couch cushions was actually prejudicial to his defense. Photographs of the broken door. The SJC held that it was in all likelihood that the lack of photographs of the broken door actually inured to the defendant's benefit. He was acquitted of burglary. He was acquitted of aggravated rape. He was only convicted of the lesser included charge of rape. Also the petitioner himself testified that the door of the victim's apartment had been kicked in. So it's difficult to see how the missing photographs there would have prejudiced his defense. You say he testified that it had been kicked in? That's correct. And the district court noted that in its opinion. The written portion of the rape kit, although that was missing, the semen analysis was available to the petitioner when he was on trial. There were other contemporaneous written statements that the victim had made including to the police officers. That information was available to him as well. Missing witnesses. The petitioner makes the point that some 60 odd times witnesses had memory failures. Other witnesses couldn't be found. He doesn't offer any argument for what those witnesses would have testified to had they been able to be found. Loud Hawk, the United States Supreme Court case and this court's decision in Trevor both basically hold that the failure of witness memories can't be sufficient to state a speedy trial claim. Moving on to Doggett, which is the issue with regard to a possible presumption of prejudice. First of all, again, Sixth Amendment rights didn't attach until a much shorter amount of time than was at issue in Doggett. Much less of that period of time was attributable to the prosecution. And the petitioner overstates the holding of Doggett. Doggett holds that after an egregious amount of time has elapsed, it's difficult to prove prejudice to the defense because you don't know what you have to prove. So in that instance, the government will have to persuasively rebut whether the defense was impaired. That's not the same as giving an affirmative requirement that the government prove a negative that there actually was no impairment. So here, basically the decision in Doggett says there are two ways that you can get around this. Either if the delay is extenuated by the petitioner's acquiescence, and that's exactly the issue that we have here. The petitioner acquiesced both in the last four year period by being responsible or at least agreeing to more than three years of the delay. He acquiesced as well by not affirmatively and vigorously pursuing his rights in the pre-indictment period. And then persuasively rebutted. Here as the Commonwealth pointed out, as the SJC noted, both of the percipient witnesses to the rape were present. It was the victim and the petitioner. It's not an issue where anybody else witnessed what was going on. Given the defense that was at issue, given the other factors, given the defendant's acquiescence and the delay, presumption shouldn't be presumed here. Moving just very briefly on to the ineffective assistance of counsel argument, the standard is doubly deferential on habeas review. The well-known Safarian and Strickland standard has to be both deficient performance and a reasonable probability that the result would have been different for that performance. And then habeas deference is applied to that and the question is whether there's any reasonable argument that the counsel satisfied the Strickland-Safarian standard here. Given the breadth of the disagreement among courts with regard to whether this would have been a viable defense to assert, we would say that the performance was not ineffective. If there are no further questions, we'll rest on our brief. Thank you.